IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-01365-WYD

JESSICA SABRINA MARJERRISON,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration[1],

    Defendant.

**ORDER**

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for disability insurance benefits.  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    BACKGROUND

Plaintiff, born on May 2, 1972, has a history of Type I diabetes since age eight. (Transcript ["Tr."] 142, 289.)   She protectively filed for disability insurance benefits in September 2009, alleging that she became disabled on June 24, 2008.  (Tr. 142-43.) The claim was denied at the initial determination stage.  (*Id*. 71-73.)   Plaintiff requested a hearing, and a hearing was held by the administrative law judge ["ALJ"] on February 3, 2011.  (*Id*. 27-50.)  On March 4, 2007, the ALJ issued a decision concluding at step four

---

[1]   Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant pursuant to Fed. R. Civ. P. 25(d).

of the sequential evaluation required by law that Plaintiff was not disabled because she could perform her past relevant work. (*Id.* 22-23, Findings 6 and 7.)

More specifically, at step one the ALJ found that Plaintiff met the insurance requirements of the Act through December 31, 2008, and that she has not engaged in substantial gainful activity since June 24, 2008. (Tr. 17.) At step two, he found that Plaintiff's diabetes mellitus is a severe impairment; and at step three, he found that Plaintiff's symptoms did not meet or equal the criteria of a listed impairment. (*Id.* 17-18.)

Between steps three and four, the ALJ assessed Plaintiff's residual functional capacity ["RFC"] and found that Plaintiff could perform the full range of light work. (Tr. 18.) He further found that while Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC. (*Id.* 20.) In reaching his conclusion, the ALJ stated that he gave "partial weight" to the RFC assessment of Dr. Kimberlee Terry, a non-examining source, "giving the claimant some benefit of the doubt by limiting her physical exertional range to light", and no weight to the opinion of Dr. David Hull. (*Id.* 21-22.)

Finally, at step four, the ALJ found that Plaintiff could perform her past relevant work as a receptionist and a retail sales clerk. (*Id.* 22.) Therefore, the ALJ found that Plaintiff was not disabled under the Act. (*Id.*)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-2), making the ALJ's March 2011 decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. § 422.210(a). Plaintiff timely requested judicial

review, and this appeal followed. Plaintiff alleges that the ALJ violated the medical opinion standards and failed to properly determine her RFC and credibility.

II. ANALYSIS

    A. Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

    B. Plaintiff's Arguments for Remand

        1. Whether the ALJ Erred in Assessing the Medical Evidence

Plaintiff first argues that the ALJ erred by not properly evaluating Dr. Hull's opinion as a treating physician. Dr. Hull opined that Plaintiff's prognosis was poor and identified, among other things, depression and psychological factors, fatigue, difficulty walking, insulin shock/coma, extremity pain and numbness, dizziness/loss of balance, headaches, and a

history "of hypoglycemia leading to syncope and sometimes seizures." (Tr. 332.) Dr. Hull opined that Plaintiff was constantly affected by severe symptoms which would interfere with her attention and concentration, and that she was incapable of performing even low stress jobs. (*Id.* 333, 21.) He also opined, among other things, that Plaintiff would need to walk every 60 minutes for ten minutes, would need to take a 30 minute break every 90 to 120 minutes, could rarely lift less than ten pounds, and that she would miss more than four days of work per month. (*Id.* 333-35.) Dr. Hull stated that Plaintiff's inability to eat caused her blood sugar to drop and pass out; she had hypoglycemic reactions with seizures; and had to avoid work-related stress because it contributed to her low blood sugars. (*Id.* 335.)

No weight was accorded the opinion of Dr. Hull by the ALJ even with his five years of contact with Plaintiff because the ALJ found his opinion "is not supported by any treatment notes or other records that he has ever treated or seen the claimant and is contrary to the objective evidence of record (5F)." (Tr. Id.) I find error with both reasons the ALJ relied on in giving no weight to Dr. Hull's opinion, and find that this case must be remanded for a proper consideration and weighing of Dr. Hull's findings.

First, I find that the ALJ failed to develop the record as to Dr. Hull. An ALJ "has a duty to fully and fairly develop the record as to material issues." *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993). "[W]hen the ALJ considers an issue that is apparent from the record, he has a duty of inquiry and factual development with respect to that issue." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008). This includes a "the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Astrue*, 73 F.3d 1019,

1022 (10th Cir. 1996) (finding error where the ALJ discounted a diagnosis of depression because there were no medical tests to support it, and remanding for further development of the record on that issue).

Dr. Hull was explicit in his opinion that the frequency and length of his contact with Plaintiff was over five years. (Tr. 332.) Given that, the ALJ could not reject Dr. Hull's opinion on the basis that it was not supported by treatment notes or other records; instead, the ALJ was required to contact Dr. Hull to determine the rationale for his stated length of contact with Plaintiff and to obtain any treatment records for this period. The ALJ was then required to determine whether Dr. Hull was a treating physician and analyze the appropriate factors in deciding whether his opinion should have been given weight, either as a treating physician or, at the very least, an examining physician. *See Krauser v. Astrue*, 638 F.3d 1324, 1330-31 (10th Cir. 2011). Since the ALJ erred by not doing this, a remand is required. To the extent the Commissioner argues that Dr. Hull's opinions are inconsistent with Plaintiff's daily activities, this is both an improper lay opinion, *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002), as well as a post hoc rationalization.[2]

I also find the ALJ erred by stating that Dr. Hull's opinion was inconsistent with the objective medical evidence but then not stating what that evidence was. *See Krauser*, 638 F.3d at 1331 (finding error with ALJ's rejection of treating physician's opinion on the basis it "was inconsistent with other evidence, including her treatment records" because this finding was "stated in conclusory fashion, without reference to 'those portions of the record

---

[2] The Commissioner also makes a number of other post hoc arguments, which are improper and not entitled to consideration. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

with which [the doctor's] opinion was allegedly inconsistent'") (quotation omitted); *see also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").

Here, there was evidence that supported Dr. Hull's findings. For example, his findings of a history of hypoglycemia and seizures were documented in the record. (Tr. 345, 310, 279, 274-75.) Dr. Book found that Plaintiff's diabetes was uncontrolled. (*Id.* 312.) Dr. Lange wrote that Plaintiff "can't do any physical activity" related to community service, even though she found that Plaintiff had no mental or physical disabilities. (Tr. 266, 252-54.)

The record also contains an opinion of Plaintiff's counselor noting the severity of Plaintiff's diabetes and stating that Plaintiff cannot work because "her diabetes is very unstable even when she takes medication regularly." (Tr. 338, 340.) The counselor also noted Plaintiff's extreme mood swings which impact Plaintiff's diabetes (*id.* 342), thus supporting Dr. Hull's finding of psychological problems. Even though the opinion from the counselor is not from an acceptable medical source and opines as to ability to work, an issue reserved to the Commissioner, it provides support for Dr. Hull's opinion and should have been properly considered. *See* SSR 06-03p, 2006 WL 2329939, at *2-4 (2006) ("information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function"); SSR 96-5p, 1996 WL 374183, *2 (1996) (adjudicators must always carefully consider medical source opinions about any issue, including opinions

about issues reserved to the Commissioner"). Further, since the counselor linked her opinion as to Plaintiff's mental impairments to the diabetes, these opinions had to be considered, even though she arguably was not an expert on diabetes. *See Fuller v. Astrue*, 766 F. Supp. 2d 1149, 1160 (D. Kan. 2011) (finding that when doctor linked two opinions, even though he was not an expert as to one of the impairments, "the ALJ may not accept one without the other—at least not without specific reasons supported by record evidence").

While the ALJ did cite to, and rely upon, the opinion of Dr. Terry, a non-examining source, an ALJ's reliance on such an opinion "is reasonable only insofar as that opinion is supported by evidence in the case record." *Lee v. Barnhart,* 117 F. App'x 674, 687 (10th Cir. 2004) (citing SSR 96-6P, 1996 WL 374180, at *2). The ALJ did not discuss or explain how Dr. Terry's findings were supported in the record. While Dr. Terry found that there was no treatment, medication or historical documentation of actual seizures (Tr. 63), treating physician Dr. Lange documented a history of such seizures and referred Plaintiff for an evaluation related to same. (Tr. 279.) The fact that a later neurologic examination was normal (*id.* 299-300) did not allow either Dr. Terry or the ALJ to discount Dr. Lange's findings that seizures had occurred. Indeed, neurophysiologist Dr. Spillers opined that the seizures "may represent nonepileptic events; however, the possibility of seizure cannot be entirely ruled out." (*Id.* 300.) Since the ALJ did not properly discuss or examine the medical evidence, a remand is required on this issue as well. *Krauser*, 638 F.3d at 1331 ("It may be possible to assemble support for [the ALJ's] conclusion from parts of the record

cited elsewhere in the ALJ's decision, but that is best left for the ALJ himself to do in the proceedings on remand.").

I also agree with Plaintiff that the ALJ failed to properly develop the record as to her mental impairments. Dr. Hull diagnosed Plaintiff with psychological problems including depression and anxiety, and both Dr. Hull and Plaintiff's counselor referenced Plaintiff's inability to handle stress. Plaintiff's counselor also suggested a link between Plaintiff's mood swings and diabetes (Tr. 341, 342—severe mood swings cause her to abandon diabetes tx which causes her to have seizures–multiple hospitalizations" and also listed as a rule out diagnosis Bi Polar disorder. (*Id.* 342.) These findings were not considered by Dr. Terry, whose opinion the ALJ relied on, and were not developed by the ALJ.

As the Tenth Circuit found in *Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006), "the ALJ misapplied the law when he failed to consider" her psychological impairment. It stated, "It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less." The court also stated:

> What is particularly troublesome about the ALJ's failure to consider Ms. Salazar's borderline personality disorder is that it may account for her abuse of drugs and alcohol, as well as her suicidal conduct and self-mutilation. . . The ALJ's failure to consider Ms. Salazar's borderline personality disorder, singly and in combination with her other impairments, requires that we reverse.

*Id.* Here, as well, the record shows that Plaintiff's depression, mood swings or other psychological problems may account for her abuse of drugs, as well as the problems with

her diabetes. Thus, the ALJ committed reversible error in not considering these impairments.

In so finding, I reject the Commissioner's argument that Dr. Hull's finding that Plaintiff cannot perform even low-stress jobs is an issue reserved to the Commissioner. This was a medical finding that had to be properly considered. The case of *Henrie* v. *U.S. Dept. of Health & Human Servs.*, 13 F.3d 359 (10th Cir. 1993) is instructive on this issue. There, the Tenth Circuit noted:

> There were several explicit references in the record to claimant's inability to handle stress, and the general nature of her psychological impairments suggested a need to probe the stress level of any prior job that the ALJ might find the claimant capable of performing under step-four.

*Id.* at 361. The Tenth Circuit has also found, relevant to this issue, that "'[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that h can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time.'" *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994) (quotation omitted). The ALJ in this case did not consider that issue either.

The Commissioner argues, however, that the record reveals that Plaintiff's only problems occurred as a result of non-compliance with her treatment regimen and substance abuse. I reject this argument. First, it is inconsistent with the ALJ's finding of severe diabetes mellitus and that Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms. Second, the ALJ did not find that Plaintiff's substance abuse was a contributing factor material to the determination that

Plaintiff is disabled, as required in order to rely on such abuse as a ground to find a claimant not disabled. See *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001). Finally, while noncompliance and/or substance abuse are relevant to the credibility determination, in this case there was evidence by Plaintiff's counselor linking Plaintiff's noncompliance to her mental impairments. As discussed previously, the ALJ failed in properly considering this.

2. Whether the ALJ Erred in Regard to Plaintiff's Credibility

I also find that Plaintiff's credibility must be reassessed on remand. As noted previously, Plaintiff's counselor linked her mental impairments to depression and possible substance abuse. This needed to be adequately considered in addressing her impairments. Also, Dr. Hull opined to many symptoms that did not appear to be properly considered by the ALJ and which may well have impacted both the RFC and credibility, including fatigue, difficulty walking, insulin shock/coma, extremity pain and numbness, dizziness/loss of balance, and headaches. These should also be properly considered on remand. See *Clark v. Barnhart*, No. 02-5093, 2003 WL 1909289, at *2-4 (10th Cir. April 22, 2003) (unpublished) (remanding where ALJ ignored claimant's allegations of severe fatigue, weakness and swelling, which her condition would reasonably be expected to produce); *Green v. Schweiker*, 749 F.2d 1066, 1070-71 (3rd Cir. 1984). (a pain type of analysis should apply to dizziness, since this type of complaint, just as with pain, cannot be discredited solely on the absence of direct medical evidence) (cited with approval in *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)).

III. <u>CONCLUSION</u>

Based upon the foregoing, I find that the ALJ did not properly analyze and weigh the medical evidence, including both Plaintiff's physical and mental impairments. I also find that Plaintiff's credibility must be reassessed. Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated: September 16, 2013

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge